**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ETHEL CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 02598 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| BARRY A. GOMBERG, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Ethel Carter brings this *pro se* lawsuit against her former attorney, Barry Gomberg, who represented her (back in 2002) on an administrative discrimination charge she had filed against ATU Local 308 (a labor organization for Chicago Transit Authority rail workers). *See* R. 1, Compl. at 1-18.[1] Although the precise nature of Carter's claims is unclear, at minimum Carter alleges that Gomberg defrauded her after she fired him in September 2002. *See, e.g., id.* at 1. Gomberg now moves to dismiss the Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); R. 11, Mot. to Dismiss; R. 12, Def.'s Br. at 1. Gomberg also argues that the suit is time-barred, or alternatively, that Carter fails to adequately state a claim under Rule

---

[1]Citations to the record are noted as "R." followed by the docket number. Page citations to R. 1 (the Complaint and its exhibits) are to the PDF pagination because there is no page-numbering scheme for the filing.

12(b)(6). *Id*. For the reasons discussed below, the motion to dismiss is granted because the suit is indisputably barred by the statute of limitations.

## I. Background

First, it is worth noting that, although the text of the Complaint consists of only a single page, the factual allegations are hard to understand and disjointed. The same goes for Carter's supporting briefs, and for many of the exhibits included with the Complaint. Nevertheless, as far as it is possible to discern Carter's factual allegations from her various submissions, the Court accepts them as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (on a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs.") (citing Fed. R. Civ. P. 10(c)). And because Carter is *pro se*, her Complaint will be liberally construed and held to a less stringent pleading standard. *Erickson*, 551 U.S. at 94.

To provide some context, in February 2000, Carter filed discrimination charges with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission against the Amalgamated Transit Union Local 308 ("ATU Local 308" for short). Compl. at 6 ("Background" Exh.). At the time, Carter was a CTA employee and served as the Union's Second Vice-President. *Id.* at 18 (Settlement Agreement Exh.). Carter alleged that the Union discriminated based on her sex by denying her the same opportunity to function as the Second Vice-President as her male predecessor. *Id.* In late December 2001, nearly two years after Carter filed the

charges, the IDHR found substantial evidence of discrimination and filed a civil rights complaint with the Illinois Human Rights Commission against the Union and on Carter's behalf. *Id.*

The issues at the heart of this Complaint began in early 2002, when Carter hired Gomberg to represent her in connection with the Human Rights Commission action. Compl. at 4 (Pl.'s 2016 State Ct. Mot.), 6 ("Background" Exh.), and 8 (Pl.'s 6/22/02 Letter). The parties' attorney-client relationship seems to have been rocky from the beginning. In June 2002, for instance, Carter wrote Gomberg a letter protesting the $2,050 retainer invoice he had sent her—according to Carter, they had verbally agreed that she would pay him as services were rendered, and not on a retainer basis. *Id.* at 8 (Pl.'s 6/22/02 Letter). Indeed, just a few months later on September 1, Carter cited Gomberg's alleged refusal to enter into a written agreement with her as one of the reasons for firing him. *Id.* at 9 (Pl.'s 9/1/02 Letter) ("What kind of attorney … refuse[s] to enter into a contract with a paying client[?]"); *see also id.* at 1 ("nothing was in writing because he refused"). Whatever the fee arrangement, shortly before he was fired, Gomberg served ATU Local 308 with notice of a statutory lien he had filed against Carter for $5,000 in attorney's fees under 770 ILCS 5/1.[2] *Id.* at 19 (Settlement Agreement Exh.). *Cf. id.* at 9 (Pl.'s 9/1/02 Letter) ("I will pay you my remaining balance when I get the money.").

Carter includes with her Complaint a copy of a "Settlement Agreement and Release," which appears to be have been signed by several ATU Local 308 officers, as

---

[2]Under 770 ILCS 5/1, "[a]ttorneys at law shall have a lien upon all claims, demands and causes of action … which may be placed in their hands by their clients for suit or

well as by Gomberg and by Carter herself, in March and April of 2003. Compl. at 18-22. According to this agreement, the Union would pay Carter $25,000 by December 31, 2003, "in full and complete satisfaction of the claims she asserted … in the [Human Rights Commission] action and underlying … charges"; in exchange, Carter apparently agreed to dismiss her Human Rights Commission action against the Union, as well as release the Union from any and all claims she might have against them. *Id.* at 19-20; *see also id.* at 24 (IDHR Voluntary Withdrawal form purportedly signed by Carter, withdrawing her charge against ATU Local 308).

Most importantly with respect to *this* case, the Settlement Agreement also says that, "due to Gomberg's statutory attorneys' lien," $5,000 of the settlement funds would go straight to Gomberg, with the remaining $20,000 going to Carter. *Id.* But Carter denies that she entered into any such agreement. Specifically, Carter maintains that she "never sign[ed] any settlement agreement or involuntary release with IDHR" and that her "signature was photocopied[.]" R. 22, Pl.'s Sur-reply Br. at 2.[3] She also alleges in the Complaint that "this year and last"—that is, 2019 and

---

collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action … ."

[3]One point as to Carter's supporting briefs, for clarity's sake. Per the Court's briefing schedule on Gomberg's motion to dismiss, Carter had until July 8, 2019 to file her response, and Gomberg until July 9 to reply. R. 18. But on June 14, 2019, Carter filed what she called a "Motion Not to Dismiss – Answers to Defendant Memorandum." R. 19. Because Carter filed no other response by July 8, the Court construes the June 14 submission as Carter's response brief. *See* R. 24, 8/12/19 Min. Entry ("The filing is deemed to be a response and terminated as a motion."). *Cf.* Def.'s Br. at 2 (assuming that Carter "intended [the motion] to act as her Response to Defendant's Motion to Dismiss."). But after Gomberg replied on July 29, R. 21, Carter filed *another* brief, this time captioned "Plaintiff's Reply to Defendants Motion Not to Dismiss," R. 22. Although the Court did not grant Carter leave to file a sur-reply (Carter never asked), the Court will nevertheless consider it in the interests of justice. *Cf. Gray v.*

4

2018—she saw "documents where [Gomberg] enter[ed] into a settlement and lien agreement for $25,000.00" but that "she never gave him permi[ssion] [and] his services were dismiss[ed] on Sept. 2002[.]" Compl. at 1. Moreover, Carter alleges that she went back to the IDHR in November 2013—without specifying what she said to the agency—but was told that "no action was take[n][." *Id.*; *see also* R. 19, Pl.'s Resp. Br. at 1 ("Plaintiff came back to Chicago in 2013 trying with the IDHR"). And when she tried to collect her money, the state courts allegedly rejected her request because of what Gomberg did. *Id.* But it is not clear here that Carter is referring to the $25,000 outlined in the Settlement Agreement—Carter seems to believe that she was actually owed a different, higher sum of money. In her response to Gomberg's motion, for example, she alleges that she "never sign[ed] any agreement for nothing" because "[w]hy would [she] accept $20,000 when [she] show[ed] proof from IDHR" that she "was to receive $87,000[]." Pl.'s Resp. Br. at 1. In any event, Carter claims that Gomberg defrauded her and she now asks for one million dollars in damages for pain and suffering, and for the money she allegedly "could ha[ve] collected if he hadn't taken [her] right to sue away." Compl. at 1.

## II. Legal Standards

A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of

---

*Hardy*, 826 F.3d 1000, 1004-1005 (7th Cir. 2016) (district courts may take a "more flexible approach" to *pro se* litigants' failure to comply with procedural rules, including by ignoring deficiencies in their filings).

5

establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But districts courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (emphasis added). At that point, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (cleaned up).[4]

Separately, a motion to dismiss "under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. A complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Ultimately, under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Subject Matter Jurisdiction

First up is Gomberg's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). To start, it is worth marching through some of the procedural history in this case. Before Gomberg filed his motion to dismiss, the Court issued a jurisdictional inquiry, noting that "the only claims that Plaintiffs appears to assert are state law claims for fraud and breach of contract … [s]o federal jurisdiction must be based on diversity of citizenship under 28 U.S.C. § 1332." R. 9, 5/6/19 Min. Entry. Given that Carter had listed Illinois addresses for both herself and Gomberg on the Civil Cover Sheet that she filed, the Court ordered her to submit a statement explaining the basis for jurisdiction. *Id.*; *see also* R. 2, Civ. Cover Sheet. Carter did so a week later but, as to diversity of citizenship, her statement alleged only that she is a "resident" of Arizona. R. 15. Because "'residence' is not the same as 'citizenship' for diversity-jurisdiction purposes"—that is, citizenship is defined "as a person's domicile

… [or] the place to which they return after temporary absences"—Carter was then instructed "to set forth *evidence* of Arizona citizenship." R. 16, 5/15/19 Min. Entry (emphasis added). So the analysis of Gomberg's Rule 12(b)(1) motion for lack of subject matter jurisdiction focuses on the evidence Carter submitted, R. 17, going beyond just the allegations in her Complaint (and the Civil Cover Sheet). *See Apex Digital*, 572 F.3d at 444.

Carter has met her burden of establishing subject matter jurisdiction. As mentioned above, federal courts have jurisdiction over claims between citizens of different states (so long as the amount in controversy exceeds $75,000, exclusive of interest and costs). 28 U.S.C. § 1332(a). Although there is no question that Carter was once domiciled in Illinois, this no longer seems to be the case. "Establishing a new domicile requires that two things occur simultaneously: first, one must be physically present in a new state; second, one must develop an intention to remain there indefinitely." *Salem v. Egan*, — Fed. App'x. —, 2020 WL 1157076, at *3 (7th Cir. Mar. 10, 2020) (non-precedential disposition) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014)). Here, going beyond just allegations, Carter has submitted evidence of 2019 mortgage payments she made on a home in Phoenix, Arizona; a bill for TV and internet services for the same Phoenix address; an alarm-warning notice from the Phoenix Police Department for that address; and a copy of an Arizona state ID card with her name and signature. R. 17, Pl.'s 2d Juris. Stmt. at 1-4. (Carter also alleges an $87,000 damages claim for the underlying discrimination case, which

satisfies the amount-in-controversy requirement). Absent any evidence that Carter's residence in Arizona is temporary and that she intends to permanently relocate to Illinois, Carter has established subject matter jurisdiction by a preponderance of the evidence. *See Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) ("When the facts that determine federal jurisdiction are contested, the plaintiff must establish those facts by a preponderance of the evidence.").

## B. Statute of Limitations

Turning to the remainder of Gomberg's motion to dismiss, he essentially argues that Carter's suit is time-barred under any legal theory that could be derived from her allegations. Def.'s Br. at 6-9. As a threshold matter, it is worth acknowledging that the statute of limitations is an affirmative defense, and "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). In fact, the Seventh Circuit has noted that dismissal under Rule 12(b)(6) on the basis of the statute of limitations is "irregular," because the defendant bears the burden of proof. *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). Nevertheless, when the allegations of the complaint itself reveal that the case is barred by the statute of limitations, dismissal is appropriate. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) ("[I]f it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading." (cleaned up)). Because the statute of

limitations is an affirmative defense, a limitations dismissal based solely on the complaint is essentially a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks*, 578 F.3d at 579).

Here, even reading the Complaint expansively and even treading carefully at the pleading stage, Carter's suit is indisputably time-barred. It appears that Carter is bringing state-law claims for breach of contract and for fraud (although it is not clear exactly what *type* of fraud Carter is alleging). *See, e.g.*, Pl.'s Sur-reply Br. at 1 (arguing that Gomberg does not "deny breach of oral or written invoice"); Compl. at 1 ("Mr. Gomberg fraud me by his actions."). Gomberg correctly argues that Carter has pleaded herself out of court. *See* Def.'s Br. at 5-9. The Complaint targets Gomberg's alleged conduct and events surrounding the Settlement Agreement that took place nearly *16 years* before Carter filed the Complaint. As explained next, the claims are not timely under *any* applicable statute of limitations.

Because the contours of Carter's claims are so blurry, and for the sake of completeness, it is worth examining the various Illinois statutes of limitations that could apply to her allegations. So, for instance, the statute of limitations is 10 years for breaches of written contracts, 735 ILCS 5/13-206, and 5 years for breaches of oral contracts, breaches of fiduciary duty, and for common-law fraud, *id.* at 5/13-205. *See Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 420 (Ill. App. Ct. 2015); *Khan v. BDO Seidman, LLP*, 977 N.E.2d 1236, 1242 (Ill. App. Ct. 2012). Similarly, the statute of limitations for fraudulent concealment is also 5 years (if, for example, Carter is

10

alleging that Gomberg committed fraud by concealing the settlement from her). *See* 735 ILCS 5/13-215. Meanwhile, for legal-malpractice actions (if Carter's claims could even be characterized as that), the statute of limitations is only two years. *See id.* at 5/13–214.3(b). But the question of *when* a statute of limitations begins to run depends on when the cause of action accrues. Generally, a cause of action accrues "when the plaintiff knew or reasonably should have known that it was injured and that the injury was wrongfully caused." *Hassebrock*, 29 N.E.3d at 420 (cleaned up) (collecting cases). *But see Kheirkhahvash v. Baniassadi*, 941 N.E.2d 1020, 1027 (Ill. App. Ct. 2011) (although legal malpractice claims generally do not accrue until "the entry of an adverse judgment, settlement, or dismissal … [t]here may be rare cases in which it is painfully obvious, prior to any adverse ruling" that the plaintiff-client was injured) (cleaned up).

In this case, Carter contends that she only learned about the Settlement Agreement—and about Gomberg's alleged misconduct—in 2018. *See* Compl. at 1 ("I later this year and last saw documents where he enter into a settlement and lien agreement for $25,000"); Pl.'s Sur-reply Br. at 2 (maintaining that she did not find out about the settlement agreement until February 2018). But Carter hired—and fired—Gomberg way back in *2002*. Compl. at 4 (Pl.'s 2016 State Ct. Mot.), 6 ("Background" Exh.), 8 (Pl.'s 6/22/02 Letter), and 9 (Pl.'s 9/1/02 Letter). Any reasonably diligent claimant would have inquired more and earlier—much earlier—to try and figure out what happened to their Human Rights Commission action. Indeed, under Illinois law, Carter need not have discovered the *exact* misconduct she

11

alleges here—rather, her claims accrued when she obtained "sufficient information concerning [her] injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *See Vector-Springfield Props., Ltd. v. Central Ill. Light Co., Inc.*, 108 F.3d 806, 808 (7th Cir. 1997). *See also Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1029 (Ill. 2012) ("[W]hen a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." (cleaned up)).

Here, the Complaint and exhibits submitted by Carter show that inquiry notice was triggered well back in 2002 and 2003. For one, she personally participated in the Human Rights Commission proceedings in 2002 after she fired Gomberg. *See, e.g.*, Compl. at 11 (Carter responding to interrogatories in October 2002). What's more, in January 2003—just a few months before the Settlement Agreement was entered into—Carter informed an ATU International executive that "*pursuant to settlement* of [her] human rights commission charge … Richard Stanton[,] counsel for ATU Local 308 states that the International should negotiate on my behalf with him." Pl.'s Resp. Br. at 5 (1/29/03 Letter) (emphasis added). So Carter's own exhibits show that had not abandoned her interest in the proceedings and was anticipating some sort of settlement. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (courts are "not bound to accept the pleader's allegations as to the effect of [an] exhibit" attached to the complaint, and may form their own conclusions) (cleaned up).

12

But that is not all. Carter also submitted a copy of an email between an ATU Local 308 member and outside counsel for the Union, in which counsel wrote that at a "meeting in May 2003 … Ethel was asked about whether she had received a payment of $25,000 and she responded that she would let the membership know when she did receive it." *See* Compl. at 17; *see also* Def.'s Br. at 3. So Carter herself relies on an email showing that she knew about the Settlement Agreement *specifically*. In any event, once the matter supposedly remained unresolved and she did not receive the money she believed she was owed, Carter reasonably should have become aware of the possibility that she had been wrongfully injured. This means that Carter's claims accrued in 2003, which is well outside even the most forgiving statute of limitations that could apply (that is, 10 years). And although it is certainly understandable that Carter—not being a lawyer herself—might not have known that her claims are subject to a statute of limitations period, that does not change the fact that her suit is time-barred. *Cf. Schmidt v. Wis. Div. of Vocational Rehab.*, 502 Fed. App'x 612, 614 (7th Cir. 2013) (non-precedential disposition) ("[M]istakes of law (even by plaintiffs proceeding pro se) generally do not excuse compliance with deadlines or warrant tolling a statute of limitations."). So the Complaint must be dismissed as untimely.

It is worth noting that, even if Carter had filed the suit on time, issue preclusion almost surely would have doomed the case. The defense of issue preclusion bars the relitigation of factual or legal issues that have already been decided in prior litigation. *See, e.g.*, *Prospect Dev., LLC v. Kreger*, 55 N.E.3d 64, 72 (Ill. App. Ct. 2016).

13

To determine the preclusive effect of a state court judgment, the Court must look to the law of the forum state. *See, e.g.*, *Brown v. City of Chi.*, 599 F.3d 772, 774 (7th Cir. 2010). So "[u]nder Illinois's issue preclusion law, an issue litigated in a prior proceeding may not be relitigated if (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.* (cleaned up). *See Prospect Dev., LLC*, 55 N.E.3d at 72.

Here, the Complaint attaches a copy of an April 2019 Illinois state court order dismissing Carter's 2018 lawsuit against ATU International and addressing some of the very same factual questions raised in *this* case. *See* Compl. at 2-3. As discussed above, the crux of Carter's claims is that she had no knowledge of the Settlement Agreement; that Gomberg had no authority to enter into the Settlement Agreement on her behalf (or do anything else in her name after September 1, 2002); and that Gomberg—through these actions—defrauded her out of money she could have obtained from the Union. So the success of Carter's suit hinges on her ability to prove that she herself did not sign or enter into the Settlement Agreement. The problem for Carter, though, is that the Illinois state court *already found* that "[i]n 2003, Carter entered into a settlement agreement and release with both ATU Local 308 and with her attorney" and that she "signed the agreement on her own behalf on March 26, 2003." Compl. at 3 (4/16/19 Cir. Ct. Cook Cty. Order). Absent any reason to think that Carter did not receive a full and fair opportunity to litigate this question in state

14

court, or that she discovered additional evidence after the judgment was issued, Carter is bound by that finding. *See, e.g.*, *Brown*, 599 F.3d at 775-76; *see also id.* at 775 ("Under Illinois law, collateral estoppel does not bar relitigation of an issue if the party against whom the doctrine is asserted was denied a full and fair opportunity to litigate the question in the previous case."). Because Carter knowingly signed the Settlement Agreement—as found by the state court judgment—she also cannot show that Gomberg defrauded her and so cannot prevail on her claims in this case. (In light of the dismissal on limitations grounds, there is no need to address the Rule 12(b)(6) aspect of Gomberg's motion.)

## IV. Conclusion

For the reasons discussed above, the Complaint is dismissed in its entirety. Ordinarily, a plaintiff would have a chance to file an amended complaint. But this dismissal is with prejudice—meaning that a final judgment will be entered dismissing the case—because she pled herself out of court with the Complaint and the exhibits that she submitted. It simply is not possible to cure the statute-of-limitations deficiency. The status hearing of May 7, 2020 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 25, 2020